# The City of Opelika *v.* Daniel *et al.*

## *Injunction.*

1. *The act authorizing cities to subscribe to the stock of railroad companies is constitutional.*—The " act to authorize the several counties, towns and cities of this State to subscribe to the capital stock of such railroads as they may consider most conducive to their respective interests," is a valid law.

2. *The Federal courts can not be interfered with by those of the State.*—It is an established principle that when matters within the concurrent jurisdiction of both the State and Federal courts have been subjected to the control of one of them, there can not be an unnecessary interference therewith by the other.

3. *A suit at law in a Federal court can be enjoined only by the same court.*—A defendant, sued at law in a Federal court, who has an equitable defence, or is entitled to the benefit of an injunction, should file his bill on the equity side of the same court. No tribunal of a State can enjoin such a suit.

4. *Courts do not judicially know the members of a firm.*—What individuals transact business under a firm name, courts can not judicially know. It is only the persons that compose a partnership of whom they can take cognizance, upon whom their process can be served, and against whom their orders and personal decrees can be enforced. The court has no jurisdiction of unknown persons engaged in business together, under a name which is not the name of an individual or of a body corporate, and can not render a decree against them.

5. *Section 2904 of the Code applies only to suits at law.*—Section 2904 of the Code of 1876 does not relate to proceedings in a court of equity.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. HURIOSCO AUSTILL.
The facts are contained in the opinion.

BARNES & SON, and BRAGG & THORINGTON, for appellant. 1. The equity of the bill is unassailable. It rests on the familiar doctrine that, although the bonds have been declared void, they are negotiable paper, payable to the bearer, not yet due, and may pass into the hands of *bona fide* holders for value, who may subject the city of Opelika to harrassing suits and expensive annoyance.—1 Vesey, 3 ; 1 John's Chan. Rep. 517 ; 1 Story Eq. Jur. §§ 695 to 705-706 ; High on Inj. §§ 7097-12 ; 24 Ala. 355 ; Willard's Eq. Jur. 358-361 ; 9 Wall. 364 ; 44 Verm't, 450-6 ; Caldwell (Tenn.), 313.

[City of Opelika y. Daniel.]

2. Timpson and Tappan are neither parties nor privies to the suit at law in the United States court. This being true, the bill is an original bill, to the extent that it affects all the bonds and coupons not covered by the interest owned in them by R. C. Daniel.—*Dunn et al. v. Clark et al.* 8 Pet. 13. And no case can be found where the Supreme Court of the United States has ever made a decision in conflict with the principle settled in that case. Yet, in this case the singular spectacle is presented of a State Chancery Court deciding that the appellant must file a bill on the equity side of the Federal court. This is the whole point in the case.—8 Pet. *supra;* 14 Wall. 81 ; 24 How. 460 ; 3 Wall. 344-347; Hempstead Rep. 472. This suit does not come within the principle established or announced in *Wiswall v. Sampson,* 14 How. 52. It is essentially a different case. It is an ordinary action at law upon coupons, not secured by any mortgage, or other lien upon property.—Authorities, *supra.*

3. The cases in 9 Wall. 409 and 415, decide nothing more than that the process to enforce a judgment rendered by United States courts can not be interfered with, or paralyzed by proceedings in a State court.

4. The decree of the Chancery Court of Lee county is conclusive between the parties.—16 Ala. 271 ; 18 Ala. 668 ; 31 Ala. 234; 20 Ala. 798 ; Revised Code, §§ 3397, 3398, 3400. And the city of Opelika has the right to set it up, and invoked its protection against Daniel, who has no other interest in the bonds and coupons than that arising from a champertous contract, and against the other defendants who are only the attorneys and agents of these parties.—4 Otto, p. 278.

5. Although the appellant may have a remedy at law, if the power and machinery of a court of equity are necessary to do complete justice between the parties, its jurisdiction will be sustained. This is true of the Federal courts as it is of those of Alabama.—2 Sumter, 454; 2 Wood & Minot, 23 ; 3 Otto, 549.

SAYRE & GRAVES, and RICE, JONES & WILEY, for appellees.—1. The questions are these : Can a State court deprive a Federal court of jurisdiction given it by law ? Can a State court interfere with or control the action, proceeding or process of a Federal court ? Can a State court deprive a party of the right given him by law to invoke the jurisdiction of the Federal court ? As the case now stands, the Federal court has full jurisdiction to determine the whole matter.

[City of Opelika v. Daniel.]

And upon all principle the jurisdiction of the United States court having attached, it ought not to be disturbed.

2. If there be any matter of equity in the bill, it ought to have been filed in the Federal court, which would have jurisdiction of all parties, as well as of the subject-matter. 22 Wall. 250. The Federal courts have jurisdiction of a certain class of cases. The object of the bill is to deprive them of their jurisdiction and the parties of their rights. The Federal and State courts have rarely come in conflict, but if a suit like this can be maintained, the conflict is inevitable. The question is fuly discussed in these cases: 7 How. 612; 6 Wall. 195-9; 9 Wall. 409, 415; 1 How. 624; 8 Pet. 1.

3. If complainant be entitled to an injunction at all, it is clear that it is unnecessary to make the mere agents, or attorneys, or bailees, of the real owners of the bonds defendants.—38 Ala. 17; 48 Ala. 287. The bill should have been against those only who own and have interest in the bonds, and against whom a decree is sought. The decree dissolving the injunction is free from error, and must be affirmed.

MANNING, J.—In this cause, the prayer for an injunction, and other relief, is based on two grounds. One of them is, that the "act to authorize the several counties, and towns and cities of the State of Alabama, to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their respective interests,"—approved December 31st, 1868,—was not passed in conformity with the constitution; and that the city bonds of Opelika, now in controversy and purporting to have been issued by virtue of said act, are therefore void. But it has very lately been decided by this court, in *Fort v. The City of Eufaula* (at this term), that the statute was not obnoxious to that objection, and must be regarded as having been a valid law. This ground or cause of suit, and foundation for the injunction consequently fail.

The other ground insisted upon is this: A decree was heretofore, in the year 1873, rendered by the Chancery Court of Lee county, in this State, in a suit brought by certain taxpayers of Opelika, on behalf of themselves and others, against the city and its municipal officers, and against the assignees in bankruptcy of the bankrupt railroad corporation to which the city bonds and coupons in controversy were issued, and against *the firm of* Henry Clews & Co., of

the city and State of New York, who claimed to be the holders of said bonds and coupons, by which decree it was adjudged, for reasons set forth in the bill of complaint, that said bonds and coupons were not issued according to law, and were null and void in the hands of the said Henry Clews & Co., and they and all the other defendants were personally enjoined from ever endeavoring to coerce the payment of them, and the city authorities of Opelika were prohibited from levying a tax for that purpose. It is represented further by the bill in the present cause, that Richard C. Daniel, of Memphis, in the State of Tennessee, plaintiff in an action at law in the Circuit Court of the United States at Montgomery, has sued this complainant therein, to recover of it the amount of 119 coupons for interest belonging to the same city bonds; that he is not the owner or *bona fide* holder of them, but has undertaken to collect them at his own expense, upon a stipulation that he shall have one-sixth or some other part of the proceeds, according to an agreement made with one Tappan, of New York, as assignee or trustee in bankruptcy of Henry Clews & Co. of that city, and with one Timpson, also of the same city, as assignee or trustee in bankruptcy of another firm of Henry Clews & Co. of New York,— in each of which firms composed of different persons, the same Henry Clews was one of the partners and both of which became bankrupts and were adjudged to be so, in the year 1875.

The bill further alleges that the said city bonds, twenty-five in number, of one thousand dollars each, with coupons for interest payable semi-annually,—are now, as complainant is informed and charges, in the hands of Josiah Morris & Co., bankers of Montgomery, Alabama, as agents of said assignees and Daniel, or of some or one of them,—or in the hands of *Sayre & Graves*, or of Rice, Jones & Wiley, attorneys of the same place, for the same parties, as such attorneys,—but of which of them, complainant does not know. The assignees, Tappan and Timpson, and Daniel in whose name the action aforesaid is brought, and the said agents and attorneys in whose, or some of whose hands, the said bonds and coupons are charged to be, are all made parties defendant to the present bill. And, in accordance with the prayer of the bill, an injunction was issued to restrain them, or any of them, from prosecuting said action at law,—or from disposing or attempting to dispose of said bonds or coupons, or in any way changing the custody or control of the same. The bill prays.

also that the court will decree that they be delivered up and cancelled.

The injunction having, upon motion, been dissolved by the chancellor, an appeal was taken to this court.

So far as the injunction relates to the prosecution of the action in the Federal court, and was intended to restrain it obviously, it was properly vacated. To preserve harmonious the relations between the State tribunals and those of the United States, it was early seen that when matters that were within the jurisdiction of both, had been subjected to the control of one of them, there should not be any unnecessary interference therewith by the other. Numerous decisions have been made, recognizing and enforcing the observance of this duty.—*Ex parte Cabana*, 1 W. C. C. 232; *Diggs v. Walcott*, 4 Cranch, 179; *City Bank v. Skelton*, 2 Blatchf. C. C. 14, 26; *Peale v. Phipps*, 14 How. 368; *Hyde v. Stone*, 20 How. 170; *Wallace v. McConnell*, 13 Pet. 136; *Hagan v. Lucas*, 10 Pet. 400; *Taylor v. Carryl*, 20 How. 584; *Freeman v. Howe*, 24 How. 450; *Buck v. Colbath*, 3 Wall. 335; *Duncan v. Darst*, 1 How. 301; *McNutt v. Bland*, 2 How. 1; *Ableman v. Booth*, 21 How. 506; *Brown v. Clark*, 4 How. 4; *Pullian v. Osborne*, 17 How. 471.

There are many cases, though, in which the parties interested in them have a right to insist that they shall be determined only in a court of the United States. This is so, in controversies " between citizens of different States." (Const. of the U. S. art. 3, sec. 1, cl. 1). In such instances, a concurrent jurisdiction exists in the State courts, only by the consent, as it were, or acquiescence of such parties: for when sued there, they may, upon proper application, in due time have the cause removed out of that tribunal into a court of the United States; which must, thenceforward take cognizance of and determine the same. And when the suit, in a controversy between citizens of different States, is thus transferred to, or is originally brought in a Federal court, unquestionably a State tribunal or officer has no authority by injunction, or otherwise, to hinder either party from being freely and fully heard in that court, and having its judgment upon the matter in controversy. The right to this, as we have seen, is expressly given by the constitution of the United States. And it is ordained in the same instrument, that: " This constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby; anything in the constitution or laws

of any State to the contrary notwithstanding." And " all executive and judicial officers,—both of the United States and of the several States," are " bound by oath or affirmation to support this constitution," (article 6).—See, also, *McKim v. Voorhees*, 7 Cranch, 279 ; *Kendall v. Winsar*, 6 R. I. 453 ; *English v. Miller*, 2 Rich. Eq. 320 ; *Dunn v. Clarke*, 8 Peters, 1.

A defendant sued at law in a Federal court, who has an equitable defence thereto, or is entitled to the benefit of an injunction, should file his bill to avail himself thereof, on the equity side of the same court, and may in a proper case do so, even after judgment is rendered.—*Freeman v. Howe*, *Buck v. Colbath*, and *McKim v. Voorhees, supra ; Dunn v. Clarke*, 8 Peters, 1. Such bills are not regarded as original bills, but as means of defending or renewing in another mode, the litigation previously begun. They may, therefore, be filed on the equity side of the Federal court in which that litigation was properly instituted, even though by a change of residence of one of the parties, both of them have become citizens of the same State.—*Dunn v. Clarke, supra.* The plaintiff in such an action may also be brought as defendant into the same court, on the equity side of it, by service of process on his counsel in the action.—Id.; Ibid.

4. Or, if the action in the Federal court be still pending, and the defence be a legal one, it may be set up in that action, as well as in an action by and against the same parties in a State court. In cases of which the courts have concurrent jurisdiction, what is a good and valid defence in one, is such, necessarily, in the other. If there be a difference in the judgments of the two courts, on the same state of facts, one or the other must be in error. And it does not belong to an inferior court of either jurisdiction, to correct the error of an inferior court of the other,—or to assume that it will commit error, and make that assumption the sole basis for a suit in equity to restrain a party from using or negotiating a security he has acquired.—*Town of Venice v. Woodruff*, 62 N. Y. 462.

5. Counsel for complainant here concede, and did so at the hearing before the chancellor, that so far as the injunction related to the coupons sued upon in the action brought by Daniel and restrained him from prosecuting that action, it was properly dissolved. But it is insisted that in respect to the bonds and the other coupons, which are not sued on at all, the City of Opelika is entitled to have them delivered up and cancelled by a decree in this cause, and to have the

[City of Opelika v. Daniel.]

injunction prohibiting the transfer of them in the meantime, re-instated. And the ground—the only one remaining,— upon which this contention is maintained,—is, that the Chancery Court of Lee county, in 1873, by its decree in the suit therein, declared said bonds and coupons void, in the hands of Henry Clews & Co.

6. In that suit it was prayed that Henry Clews & Co., described to be a firm of bankers of the city and State of New York, should be made a defendant. The persons composing the firm were not made parties, nor were their names set forth, for the reason, as the bill alleges, that it was not known to complainants who those persons were. And there was no prayer that they should be made parties when known, nor did they appear in the cause by any solicitors of the court. It now appears also by the bill in the present cause, that there were two firms in the city of New York, of the name of Henry Clews & Co., composed in part of different persons, both of which firms in the year 1875, became and were adjudged to be bankrupt.

According to the bill of complaint in the suit against the city of Opelika and others, in which the decree referred to was rendered,—there was no person existing, natural or artificial, of the name of *Henry Clews & Co.* And it is only a person, of one kind or the other, against whom such a suit could be maintained. What individuals do business at any time, as partners, under the firm-name of Henry Clews & Co., or A. T. Stewart & Co., or any other name, courts can not judicially know. It is only the persons that compose a partnership of whom they can take cognizance, upon whom their process can be served, and against whom their orders and personal decrees can be enforced. And when it is disclosed that a name used as that of a defendant in a bill of equity, is not the name of any individual or body corporate, but is that by which a number of unknown persons transact a certain kind of business, together, it is made apparent that without more, the court has no jurisdiction of such persons, or authority to render a decree against them.

7. We have, it is true, a statute, (Code of 1876), section 2904, in a chapter under the title,—" Proceedings in Civil Actions in Courts of Common Law," which authorizes an action at law against a partnership by its firm name; and, when the summons has been served on one or more of the partners, a judgment therein may be rendered against the partnership, which shall bind the joint property of the con-

[City of Opelika v. Daniel.]

cern.   But that statute does not relate to proceedings in a·
court of equity.

8.   Also by section 3774 (3340) of the Code, it is enacted*
that: "In cases where it is necessary to make any persons·
defendants to a bill, and the names of all or any of them are
*unknown to the plaintiff, and. can not be ascertained on diligent
inquiry,* and he annexes to his bill an affidavit that the names
of such persons are unknown, *that he has made diligent
inquiry to ascertain the same,"* &c., they may be made parties
by publication, "describing such unknown parties, as near
as may be by the character in which they are sued, and with
reference to their title or interest in the subject-matter."
But there was no compliance on the part of complainants in
the cause in Lee county with the requirements of this statute ;·
and without such compliance, the persons doing business in.
the name of Henry Clews & Co., could not be brought within
the jurisdiction of the court.   All that is said in the affidavit
made by a solicitor in the cause, on which the publication as·
to that firm was made by order of the register, is, "that the
firm of Henry Clews & Co. who as a firm are made party
defendant to the foregoing bill filed by John J. Smith, *et al.*.
in said chancery district, is a firm of bankers doing business·
under said firm name in the city and State of New York, and
that their post-office is said city of New York."   There is a
total failure here to observe some of the most important pro-
visions of the law on the subject.   The persons composing
the partnership mentioned were consequently not brought·
within the jurisdiction of the Chancery Court of Lee county,·
and are not bound by its decision.

In a case somewhat similar to this, where jurisdiction of a
defendant in actions at law, was sought to be obtained by
posting notice of the process according to a statute of Vir-
ginia, on the front door of a house which he had lately occu-
pied with his family, as his home, and had left because the
place in which it was situated was brought within the power·
of the Federal army during the late war,—a bill having been
filed after the war, to restrain the execution of the judg--
ments,—the Supreme Court of the United States said : "No-
tice to the defendant, actual or constructive, is an essential
prerequisite to jurisdiction.   Due process with personal ser-
vice, as a general rule is sufficient in all cases.   .   .   Doubt-
less, constructive notice may be sufficient in certain cases;
but it can only be admitted in cases coming fairly within
the provisions of the statute authorizing courts to make
for publication, and providing that the publication, when

made, shall authorize the court to decide and decree." And it was held that the process was not served in this case, by being "posted on the front door of the party's usual place of abode," within the meaning of the law, and that the judgments against him were therefore void.—*Earle v. McVeigh,* 1 Otto, 507–8.

Without placing our decision on the important ruling of the Supreme Court of the United States in the recent case of *Pennoyer v. Neff,* (5 Otto, 714), we are compelled to hold that the Chancery Court of Lee county acquired no jurisdiction over the persons composing the firm of Henry Clews & Co.—and its decree was inoperative and void against them.

9. The facts set forth in the bill in that cause, as the ground for a decree therein are not made such in the bill in this cause. The claim to relief is based upon the decree alone in the Chancery Court of Lee county.

10. We are of the opinion that the citizens of Alabama, who are made defendants to this cause, as agents and attorneys merely of other persons,—are not proper parties to the suit. And as the other defendants are all non-residents, we should be inclined to hold if nothing else had happened, that the Chancery Court of Montgomery county had no jurisdiction of the cause. But as those defendants have appeared by solicitors to move for a dissolution of the injunction,— we make no decision on that point.

The decree of the chancellor dissolving the injunction must be affirmed.